UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WASHINGTON CAPITAL VENTURES, LLC,

                              Plaintiff,

— against —

DYNAMICSOFT, INC.,

                             Defendants.

04 Civ. 8878 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

    Defendant dynamicsoft, Inc. ("dynamicsoft") has moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss two counts of a three-count Amended Complaint seeking damages and contract reformation on the basis of an alleged fraud perpetrated by dynamicsoft (collectively, the "fraud claims"). Plaintiff Washington Capital Ventures, LLC ("WCV") has opposed the motion. For the reasons discussed below, the Court grants dynamicsoft's motion to dismiss.

## I. BACKGROUND

    The parties to this action are WCV, a venture capital firm providing consulting services to financially distressed companies, and dynamicsoft, a firm specializing in software infrastructure solutions for electronic networks. (See Am. Compl. ¶¶ 1-3.) In 2002, dynamicsoft retained WCV's consulting services in an attempt to improve the financial performance of the firm. Two WCV consultants, Lev Volftsun

1

("Volftsun") and Ian Landy ("Landy"), began working for dynamicsoft as its Chief Executive ("CEO") and Chief Operating Officer ("COO"), respectively. The compensation package negotiated by Volftsun and Landy on behalf of WCV with dynamicsoft did not involve a fixed salary. Instead, the payment consisted exclusively of dynamicsoft common stock that could be purchased by WCV pursuant to a warrant agreement and sold pursuant to put options exercisable in certain situations, e.g., the sale of dynamicsoft, which the parties termed a "Liquidity Event."[1] (See Am. Compl. ¶¶ 4-6.)

In August of 2002, dynamicsoft's Board of Directors passed a resolution relating to the compensation package for WCV's consulting services. (See Consent to Action in Lieu of a Special Meeting of the Board of Directors of dynamicsoft, Inc. dated August 21, 2002 ("Resolution") at 1, attached as Ex. C to Lonergan Aff.) The Resolution allegedly reflected the compensation terms negotiated by dynamicsoft and WCV. (See Am. Compl. ¶ 7.) According to the Resolution, the Board of Directors granted WCV the rights to certain securities as follows:

WHEREAS, Lev Volftsun and Ian Landy are employees of

---

[1] The "Liquidity Event" is defined in the Put Agreement as having "the same meaning as provided in the Certificate of Incorporation." (Put Agreement dated September 11, 2002 ("Put Agreement") § 1, attached as Ex. B to Affirmation of Samuel Lonergan ("Lonergan Aff.").) While dynamicsoft's Certificate of Incorporation is not quoted or referenced by the Amended Complaint, it is undisputed that the sale of dynamicsoft constituted a Liquidity Event that triggered WCV's put options under the Put Agreement.

> Washington Capital Ventures and are supplying consulting services to dynamicsoft [sic]
>
> NOW, THEREFORE, BE IT RESOLVED, that the Board will grant Washington Capital Ventures a warrant for the purchase of 1,292,900 shares of common stock at $0.30 per share, and be it further
>
> RESOLVED, that the Board will grant Washington Capital Ventures two put options which will be exercisable upon a Liquidity Event. The first put will allow WCV to sell 491,302 shares back to the Company and participate pari pasu with the E holders in the liquidation preference. The second put will be for the remaining 801,598 shares and will participate pari pasu with the A, B, C, and C-1 preferences. If WCV does not exercise the puts, their shares will be treated as common shares.

(Resolution at 1.)

The Chief Financial Officer ("CFO") of dynamicsoft then allegedly caused two documents to be prepared based on the transaction authorized by the Board of Directors through the Resolution. (Am. Compl. ¶ 9.) The first document, a warrant agreement for the purchase of dynamicsoft shares, is not alleged to be inconsistent with the terms authorized by the Resolution. (See Warrant for the Purchase of Shares of Common Stock of dynamicsoft, Inc. dated September 11, 2002 ("Warrant Agreement") § 3(b) at 8, attached as Ex. B to Lonergan Aff.; Am. Compl. ¶ 8.) The second document prepared pursuant to the CFO's alleged instructions is the Put Agreement, which is not attached to, but is extensively referenced in, the Amended Complaint. This document contains two formulae to calculate the buy-back price of the two put options:

3

The First Warrant Share Price shall be equal to:

(i) $.30 x (the Series E Preference Amount to be paid upon the closing of the Liquidity Event ÷ the Series E Preference Amount), up to a maximum of $.30;

plus

(ii) an amount equal to the proceeds from the Liquidity Event distributable with respect to each share of Common Stock.

The Second Warrant Share Price shall be equal to:

(i) $.30 x (the Series A, B, C and C-1 Preference Amount to be paid upon closing of the Liquidity Event ÷ the Series A, B, C and C-1 Preference Amount), up to a maximum of $.30;

plus

(ii) an amount equal to the proceeds from the Liquidity Event distributable with respect to each share of Common Stock.

(Put Agreement Ex. A at 6.)

According to the Amended Complaint, upon indication by the CFO that the Put Agreement "reflected the terms of the Resolution" (Am. Comp. ¶ 10), Volftsun signed the agreement on behalf of WCV without reading the language of the document. (See id.) Dynamicsoft alleges that "because of the nature of their relationship, Volftsun trusted the CFO's representations, relied on them, and executed the documents." (Id.) At the same time, Volftsun also exercised the purchase options WCV received pursuant to the Warrant Agreement for a total cost of $387,870. (See id. ¶ 11.)

4

Some time after WCV's purchase of dynamicsoft stock was completed, dynamicsoft was acquired by Cisco Systems, Inc. ("Cisco"). (Id. ¶ 19.) The parties do not dispute that pursuant to the terms of the Cisco sale, the value of the put options under the Put Agreement is $216,498, a net loss of over $150,000 compared to the price paid by WCV to purchase the shares through the Warrant Agreement.[2] (See id. ¶ 14.) WCV alleges that if the Put Agreement had reflected the terms contemplated by the Resolution, the put options would be valued at over $1.4 million under the terms of the Cisco sale. (See id. ¶ 14.)

WCV alleges that the formulae contained in the Put Agreement constitute a fraudulent departure from the terms of the Resolution. According to the Amended Complaint, the CFO's alleged misrepresentations intentionally overlooked material differences between the formulae in the Put Agreement and the terms of the Resolution. (See id. ¶ 16.) On this basis, WCV seeks damages or the reformation of the Put Agreement in order to conform to the terms of the Resolution. (See Am. Compl. ¶¶

---

[2] Dynamicsoft has not yet paid the $216,498 due to WCV under the terms of the Put Agreement, but it contends that it "has never disputed the validity of the Put Agreement, and is prepared to perform under the clear terms of the Put Agreement once WCV's revisionist efforts cease." (Defendant's Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Amended Complaint, dated Feb. 25, 2005 ("dynamicsoft Mem. of Law") at 12.) It has submitted an Offer of Judgment under Fed. R. Civ. P. 68 to WCV for the $216,498 owed under the Put Agreement and sought by WCV in Count III of WCV's Amended Complaint. (See Defendant's Rule 68 Offer of Judgment, dated Feb. 25, 2005 ("dynamicsoft Rule 68 Offer"), attached as Ex. D to Lonergan Aff.)

24-28.)

## II. STANDARD OF REVIEW

Under the standard of review applicable to a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Flores v. S. Peru Copper Corp., 406 F.3d 65, 74 (2d Cir. 2003) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Moreover, at this stage, "the Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." SEC v. Pimco Advisors Fund Management LLC, 341 F. Supp. 2d 454, 463 (S.D.N.Y. 2004) (citing Securities Investor Protection Corp. v. BDO Seidman, LLP, 222 F.3d 63, 68 (2d Cir. 2000)).

## III. DISCUSSION

The Court grants dynamicsoft's motion, concluding that the Amended Complaint fails to state a claim of fraud upon which relief can be granted. The Court finds first that the Resolution and Put Agreement may be considered in reviewing dynamicsoft's motion even though neither document was originally attached to the Amended Complaint. Next, it finds that WCV has failed to allege a set of facts that, if true, could possibly constitute a basis to establish reasonable or

justifiable reliance on any misrepresentations made by dynamicsoft. Because reasonable or justifiable reliance is necessary for WCV's claims to succeed, dynamicsoft's motion to dismiss is granted.

A. <u>THE RESOLUTION AND PUT AGREEMENT MAY BE CONSIDERED BY THE COURT ON DYNAMICSOFT'S MOTION</u>

The Court may consider the Put Agreement and Resolution in reviewing the instant motion despite WCV's failure to attach them to or file them together with the Amended Complaint. Federal Rule of Civil Procedure 12(b) provides that in a Rule 12(b)(6) motion, when "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Not all materials that are not originally attached to the pleadings are, however, considered to be "outside the pleading" such that they may not be considered without converting a Rule 12(b)(6) motion into a motion for summary judgment. In <u>Cortec Indus., Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 47 (2d Cir. 1991), the Second Circuit held that "[t]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Applying this standard to the securities fraud claim in that

7

case, Cortec held that "when a plaintiff chooses not to attach to the complaint or incorporate by reference a prospectus upon which it solely relies and which is integral to the complaint, the defendant may produce the prospectus when attacking the complaint for its failure to state a claim." Id. at 47.

In International Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69 (2d Cir. 1995), the Second Circuit applied the Cortec doctrine to a motion to dismiss based on a contract that was not attached to the operative complaint in that case. See id. at 70-71. There, the plaintiff's complaint relied on the preferential treatment that the defendant allegedly demonstrated towards a third party in the defendant's agreement with that party. Id. The agreement had not been included in the original complaint, but was attached to the motion to dismiss. Id. at 72. The Circuit Court ruled that it was proper to "consider [the contract's] terms in deciding whether [the plaintiff] can prove any set of facts that would entitle it to relief," holding that the contract was "'integral' to the complaint" because it "relied heavily on its terms and effect." Id. Moreover, in its analysis, the Court of Appeals declared that it was free to construct the contract independently of the interpretation alleged by the complaint, although the Court also determined it would "strive

to resolve any contractual ambiguities in [the non-moving party's] favor." Id.

In the instant case, neither the Put Agreement nor the Resolution relied upon by the parties as a basis for their arguments was attached to WCV's Amended Complaint. However, the Amended Complaint does quote extensively from the Resolution (see, e.g., Am. Compl. ¶ 7) and the Put Agreement (see, e.g., id. ¶¶ 12-13), and, in so doing, appears to incorporate the document by reference. Additionally, the facts of the case provide a strong basis for considering the Resolution and Put Agreement as integral to the Amended Complaint. As with the contract in International Audiotext Network, the Put Agreement and Resolution are necessary components of WCV's case.[3] See 62 F.3d at 72. Therefore, application of the principles formulated in Cortec and International Audiotext Network supports a determination that the Court may consider the Put Agreement and Resolution in reviewing dynamicsoft's Rule 12(b)(6) motion.

B. DYNAMICSOFT'S FRAUD CLAIMS MUST BE DISMISSED

Dynamicsoft's motion to dismiss presents two challenges to WCV's fraud claims. First, dynamicsoft contends that the fraud allegations fail to state a claim upon which relief can

---

[3] Indeed, the facts of this case make the Put Agreement a stronger candidate for consideration than the contract in International Audiotext Network since, in the case at hand, the disputed agreement is the object of WCV's challenge, not merely a piece of evidence used to support the plaintiff's case. See International Audiotext Network, 62 F.3d at 71 (noting that the agreement at issue was used as evidence to support the plaintiff's allegations in that case).

9

be granted pursuant to Fed. R. Civ. P. 12(b)(6).  Second, dynamicsoft asserts that the Amended Complaint fails to comply with the particularity requirements of Fed. R. Civ. P. 9(b). Because the Court finds that WCV's fraud claims fail to state a claim upon which relief can be granted, it dismisses these claims without reaching the merits of WCV's challenge under Rule 9(b).

WCV's fraud claims cannot succeed because New York law clearly conditions fraud on the reasonability of the plaintiff's reliance on a material misrepresentation, which in turn cannot be established when a party simply fails to read an unambiguously-worded agreement.  According to New York law, in order to prove a fraud claim, a plaintiff must establish "a representation concerning a material fact, falsity of that representation, scienter, reliance and damages." Stuart Silver Associates, Inc. v. Baco Development Corp., 665 N.Y.S.2d 415, 417 (App. Div. 1st Dep't 1997).[4]  The requirement of reliance is satisfied only if the reliance is reasonable.  See id. ("Plaintiff must show not only that he actually relied on the misrepresentations, but also that such reliance was reasonable.") (citing CPC Intern. Inc. v. McKesson Corp., 514 N.E.2d 116, 124 (N.Y. 1987)).

---

[4] The parties do not disagree that New York law applies to this dispute pursuant to the terms of the Put Agreement, which contains a choice of law provision establishing New York state law as the governing law. (See Put Agreement § 9.)

A plaintiff's ability to establish reasonable reliance is irreparably impaired when it simply fails to read a binding document prior to executing the document. See <u>Morby v. Di Siena Associates LPA</u>, 737 N.Y.S.2d 678, 678 (App. Div. 3d Dep't 2002) ("Having failed to read the release before signing it, plaintiff simply cannot establish the essential element of justifiable reliance."). In <u>Morby</u>, the Appellate Division rejected the notion that a written personal-injury release, to which the plaintiff had agreed, was vitiated by the defendant's oral misrepresentations and specifically ruled that "the allegedly fraudulent misrepresentation . . . could have been readily discovered upon the reading of the document, and plaintiff cannot now avoid his obligations under a release he did not read merely by asserting that he 'thought' it was something else." <u>Id.</u> at 680.

Similarly, in <u>Dunkin' Donuts v. Liberatore</u>, 526 N.Y.S.2d 141 (App. Div. 2d Dep't 1988), the Appellate Division rejected the plaintiff's fraud allegation based on an alleged fraudulent inducement to sign an unambiguously-worded guarantee, concluding that "[i]t has been uniformly held that if the facts represented are not matters peculiarly within the representor's knowledge, and the other party has means available to him of knowing by the exercise of ordinary intelligence the truth or real quality of the subject of the representation, he must make use of those means." <u>Id.</u> at 143

(citing, inter alia, Danann Realty Corp. v. Harris, 157 N.E.2d 597 (N.Y. 1959)).  Applying the principle to the appellant's claim that "she was fraudulently induced to sign a written guarantee for the debts and obligations of her husband's corporation . . . [by a sales manager's] reference to the guarantee as a routine document," the court held that "the appellant's failure to read the clear language of the guarantee precludes a defense of fraudulent inducement." Id. at 142-43.

In the instant case, the preceding doctrine squarely precludes WCV's fraud claim.  Like the plaintiffs in Morby and Dunkin' Donuts, WCV faced a situation in which some representations, which at this stage the Court must assume were false, were plainly contradicted by the meaning of the written document that the claimant failed to read.  The Amended Complaint concedes that neither Volftsun nor anyone else employed at WCV read the Put Agreement.  Instead, they trusted the CFO's representations even though a cursory reading of the Put Agreement would have revealed the obvious departure of its plain meaning from the language of the Resolution.  As a sophisticated business party, Volftsun had the means to uncover the falsity of the CFO's statements if he had read the Put Agreement.  Volftsun's failure to read the document amounts to a failure to use "the means available to him of knowing by the exercise of ordinary intelligence the

truth or real quality of the subject of the representation." Dunkin' Donuts, 526 N.Y.S.2d at 141. This is precisely the circumstance under which New York law prohibits parties from proving reasonable reliance, and consequently, fraud. See id. As a result, WCV's fraud claims must fail as a matter of law.

WCV cannot overcome its lack of reasonable reliance by pointing to an alleged duty to disclose on the part of dynamicsoft. If a party has a duty to disclose, which does not arise unless at least one of three circumstances occurs,[5] that party's failure to disclose a material fact may be as actionable as an affirmative misrepresentation made by the party. See Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank, 57 F.3d 146, 153 (2d Cir. 1995). The availability of the concealment route to demonstrating fraud does not enable a plaintiff to avoid proving the remaining elements of fraud, including reasonable reliance, however. On the contrary, "[t]o prevail on its theory of fraudulent concealment, [the plaintiff is] also required to establish that it actually relied on the disclosure or lack thereof, and that such reliance was reasonable or justifiable." Banque

---

[5] In Brass v. American Film Technologies, Inc., 987 F.2d 142 (2d Cir. 1993), the Second Circuit listed three circumstances in which a duty to disclose may arise under New York law: "first, where the party has made a partial or ambiguous statement . . .; second, when the parties stand in a fiduciary or confidential relationship with each other; and third, 'where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.'" Id. at 150 (quoting Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A., 731 F.2d 112, 123 (2d Cir. 1984)) (internal citations omitted).

Arabe, 57 F.3d at 156 (citing Harris v. Camilleri, 431 N.Y.S.2d 65, 68 (App. Div. 2d Dep't 1980)); see also Dunkin' Donuts, 526 N.Y.S.2d at 143 (rejecting a claim of fraudulent concealment based on lack of reasonable reliance).

In this case, the Court does not need to decide whether dynamicsoft owed WCV a duty to disclose and whether this duty was breached. Even if such duty existed by application of one of the three special circumstances articulated in Brass, WCV's fraud claims would still fail because WCV did not reasonably rely on dynamicsoft's alleged omissions.[6] Therefore, WCV fails to establish a claim on which damages or contract reformation can be granted on the basis of dynamicsoft's alleged fraud.

Because defendant's motion meets the requirements for dismissal under Rule 12(b)(6), this Court does not need to address dynamicsoft's Rule 9(b) challenge to WCV's fraud claims.

## IV. CONCLUSION

For the reasons discussed above, it is hereby

**ORDERED** that the motion of defendant dynamicsoft, Inc. to dismiss the claims for contract reformation and fraud in the

---

[6] Even more fundamentally, the existence of a duty to disclose is irrelevant in this case because it adds nothing to what the Amended Complaint clearly alleges. Because the Amended Complaint alleges affirmative misrepresentations by dynamicsoft's CFO, and all allegations are accepted as true for the purposes of a Rule 12(b)(6) motion, WCV did not need to rely on any omission by dynamicsoft to avoid dismissal of its fraud claims.

Amended Complaint filed by plaintiff Washington Capital Ventures, LLC is GRANTED.

**SO ORDERED.**

Dated:   New York, New York
         May 31, 2005

                                    _____
                                       VICTOR MARRERO
                                          U.S.D.J.